IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DAVID JAY BOSTIC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No.  13-1346-JAR |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ACTING COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant Commissioner of Social Security denying Plaintiff David Bostic's applications for a period of disability and disability benefits under Title II of the Social Security Act,[1] and supplemental security income benefits under Title XVI of the Social Security Act.[2]  Because the Court finds that Defendant Commissioner's findings are supported by substantial evidence, the Court affirms the decision of Defendant Commissioner.

## I.    Procedural History

On June 22, 2010, Plaintiff protectively applied for a period of disability, disability insurance benefits, and supplemental security income benefits.  His applications claimed an onset date of April 4, 2010; and he was last insured for disability insurance benefits on December 31, 2014.  Plaintiff's applications were denied initially and upon reconsideration.

---

[1] 42 U.S.C. §§ 401–434.

[2] 42 U.S.C. §§ 1381–1383f.

Plaintiff timely requested a hearing before an administrative law judge ("ALJ"). After a hearing, the ALJ issued a decision finding that Plaintiff was not disabled; the Appeals Council denied Plaintiff's request for review of the ALJ's decision. Plaintiff then timely sought judicial review before this Court.

## II.     Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether Defendant applied the correct legal standards.[3] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of Defendant.[5]

## III.    Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[6] An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any

---

[3] *See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[4] *Id.* (quoting *Castellano*, 26 F.3d at 1028).

[5] *Id.*

[6] 42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A).

other kind of substantial gainful work which exists in the national economy."[7] The Secretary has established a five-step sequential evaluation process to determine whether a claimant is disabled.[8] If the ALJ determines the claimant is disabled or not disabled at any step along the way, the evaluation ends.[9]

Plaintiff does not challenge the ALJ's determination at step one that Plaintiff has not engaged in substantial gainful activity[10] since April 4, 2010, the alleged onset date. Nor does Plaintiff challenge the ALJ's determination at step two that Plaintiff has medically "severe" impairments: major depression, attention deficit hyperactivity disorder (ADHD), generalized anxiety disorder, polysubstance abuse in partial remission, and borderline personality disorder.

But Plaintiff challenges the ALJ's determination of Plaintiff's Residual Functional Capacity (RFC) at step four based on the ALJ's purportedly erroneous evaluation of the medical evidence, including the weight accorded to the opinions of his treating physician, psychologists who examined him, and state agency psychologists who reviewed the records but did not examine him.

**IV.   Discussion**

Plaintiff contends that the ALJ improperly: discounted the opinion of his treating physician, Dr. Ram; accorded too much weight to the opinions of state agency psychologists, Drs. Cohen and Biscardi, who reviewed records but did not examine him; misconstrued the

---

[7]*Id.* § 423(d)(2)(A); § 1382c(a)(3)(B).

[8]*Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1983).

[9]*Id.*

[10]*See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

3

opinion of examining psychologist Dr. Schwartz; and entirely failed to weigh the opinion of psychologist Dr. Pearce who examined him and performed neuropsychological testing.

### A. The ALJ's RFC Determination

The ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to simple, routine, and repetitive tasks requiring no more than one or two steps and which require no reading of directions in the performance of the job.  The ALJ further determined that Plaintiff is able to respond to occasional changes in the work setting as well as tolerate occasional interaction with coworkers and supervisors, but unable to tolerate interaction with the public.

### B. Dr. Ranjit Ram, Treating Physician

The ALJ expressly gave no weight to the opinion of treating physician Ram, who opined, in a March 14, 2012, Medical Source Statement, that Plaintiff has a marked inability to work in coordination with others and moderate limitations in mental functioning, including in the ability to: carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; accept instruction and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

Plaintiff contends that the ALJ erred by failing to give sufficient reasons for rejecting the opinion of Dr. Ram.   Here, Dr. Ram rendered an opinion on Plaintiff's nonexertional limitations, not on the ultimate issue of Plaintiff's disability or employability.  With respect to issues concerning the nature and severity of the claimant's impairments, a treating source's

opinion must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not inconsistent with other substantial evidence in the record, but if it is "deficient in either respect, it is not entitled to controlling weight."[11]  Of course, even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference."[12]  If the ALJ does not give controlling weight to the opinion of the treating physician concerning the nature and severity of the claimant's limitations, the ALJ must give reasons for the weight accorded the treating source's opinion.[13]  And, if the ALJ entirely rejects the opinion of the treating source, the ALJ must give "specific, legitimate reasons" for doing so.[14]

Here, the ALJ gave specific, legitimate reasons for "giving no weight to the medical source opinion of Dr. Ram that the claimant would have moderate limitations in many areas of mental functioning and a marked inability to work in coordination with others."  The ALJ explained that this opinion of Dr. Ram was inconsistent with: (1) his progress notes reflecting Plaintiff to be calm and cooperative with normal attention and concentration; (2) Plaintiff's reported daily activities including caring for multiple ill, elderly, and disabled family members; and (3) Dr. Ram's assessed GAF scores, "which reflected at most, moderate symptoms as described above."

These explanations illustrate that the ALJ properly applied the so-called *Goatcher*

---

[11] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2) and citing SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

[13] *Watkins*, 350 F.3d at 1301.

[14] *Id.* (citing *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir.1996) (quoting *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987)).

5

factors to be considered in evaluating the opinion of a medical source.  These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[15]  The ALJ, however, is not required to discuss each of these factors.[16]

The ALJ relied upon the *Goatcher* factors concerning the length, frequency, and nature of treatment, in explaining that "claimant has a history of treatment of non-compliance with gaps in treatment that would hamper his ability to function better." And, the ALJ relied upon the *Goatcher* factors concerning the consistency between the opinion and the doctor's treatment notes as well as other evidence in the record, in explaining that Dr. Ram's opinion was inconsistent with his own treatment notes and other evidence in the record.

Having reviewed the record, this Court agrees that Dr. Ram's treatment notes are inconsistent with his opinion and other record evidence.  And, this Court agrees that there is substantial evidence that Plaintiff repeatedly failed to take either prescribed medication, or failed to take the prescribed dosage; but when Plaintiff was compliant with the medication regimen, he experienced improvement in his ability to function, including attention and concentration.

---

[15]*Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir.1995) (citing 20 C.F.R. § 404.1527(d)(2)-(6)).

[16]*See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir.2007) (finding that the ALJ's lack of discussion of all the factors did not prevent the court from giving meaningful review to the ALJ's decision).

Dr. Ram's treatment notes reveal that Dr. Ram treated Plaintiff for three years, from June 3, 2009, through March 14, 2012.  Dr. Ram treated Plaintiff on nine occasions during those three years, seeing Plaintiff about three times a year, with large gaps between some visits.  In 2009, Plaintiff saw Dr. Ram three times, and in 2010, Plaintiff saw Dr. Ram three times.  In 2009 and 2010, Dr. Ram repeatedly recorded that Plaintiff was either not taking his prescribed medications or unilaterally reduced the dosage.  And, although Plaintiff complained to other providers that he was financially unable to buy the medications, Dr. Ram's notes reveal that Dr. Ram consistently provided Plaintiff with free samples of Cymbalta, one of the prescribed medications, and periodically provided Plaintiff with samples of Straterra, another prescribed medication.

Although Dr. Ram recorded in 2009 and 2010 that Plaintiff had problems with concentration and focusing, this was during the period that Plaintiff was not compliant with the prescribed medication regimen. In 2011, when Plaintiff was more compliant, Dr. Ram recorded that Plaintiff "continues to do well."  In each of his visits on November 9, 2011, December 7, 2011, and January 11, 2012, Dr. Ram recorded that Plaintiff's attention and concentration were good and that he was calm and cooperative.  Only in the last visit, on March 14, 2012, did Dr. Ram characterize Plaintiff's attention and concentration as fair; and only this note characterizes Plaintiff as having "some difficulty in performing things and following instructions to some extent."[17]  Although Plaintiff argues that Dr. Ram's treatment notes provided only general statements of his condition, the Court disagrees.  Dr. Ram's treatment notes did not provide just

---

[17]It should be noted that Dr. Ram's opinion that Plaintiff has a moderate limitation in the ability to carry out detailed instructions is essentially adopted in the ALJ's RFC that Plaintiff is limited to jobs that require simple, routine and repetitive tasks requiring no more than one or two steps and which require no reading of directions.

general characterizations that Plaintiff was doing well or was stable.  Rather, the treatment notes specifically addressed Plaintiff's attention and concentration, as well as his calm affect and cooperative mood during 2011 and 2012.   Thus, the ALJ properly considered Dr. Ram's treatment notes as specifically and directly inconsistent with his opinion in the Medical Source Statement.

Moreover, Dr. Ram's treatment records reveal that Dr. Ram scored Plaintiff as having a GAF of 45 at the initial visit in 2009, a GAF of 50 at the next visit in July 2009, GAFs of 53 and 55 in 2010 and GAF scores of 55 or 56 in 2011 and 2012.  GAFs in the range of 51 to 60 indicate moderate difficulty in social, occupational or school functioning.[18] While GAF scores are not determinative of mental impairment, it is evidence to be considered with the rest of the record.[19]

The ALJ also explained that Dr. Ram's opinion was not consistent with other evidence in the record, including Plaintiff's reported activities of daily living.  Plaintiff reported to Dr. Ram on one occasion that he was taking care of his stepmother who had cancer.  On another occasion, Plaintiff reported to Dr. Ram that he was going back east to care for two ill and infirm relatives. These reported activities of daily living are inconsistent with Dr. Ram's opinion that Plaintiff had difficulty getting along with others.  Similarly, Plaintiff's reports of shopping for his family and engaging in other public activities without any indication of problems in interacting with the public at large is inconsistent with Dr. Ram's opinion.  Plaintiff protests that these self-described activities of caring for ill family members are too vague to supply substantial evidence of his

---

[18] Diagnostic and Statistical Manual of Mental Disorders 34 (American Psychiatric Ass'n ed., 4th ed. 2000).

[19] *Petree v. Astrue*, 260 Fed. App'x 33, 42 (10th Cir. 2007).

abilities, for Dr. Ram's note does not say whether Plaintiff actually went back east to care for his family members, and neither of Dr. Ram's notations describe what Plaintiff actually did in caring for his family. But, as Defendant notes, it is Plaintiff's burden to produce evidence of a disabling impairment, not Defendant's burden.[20]

In short, the ALJ's finding that Dr. Ram's opinion is inconsistent with his treatment notes, his GAF scores, and other record evidence is based on substantial evidence, and the ALJ did not err in not giving Dr. Ram's opinion controlling weight. Nonetheless, such opinion is still entitled to deference and must be weighed using the *Goatcher* factors.[21] As addressed above, the ALJ did weigh Dr. Ram's opinion using these factors.

### C. Dr. Michael Schwartz, Examining Psychologist

Having rejected the opinion of the treating physician, Dr. Ram, the ALJ was required to consider all other medical opinions in the record to see if they outweigh the reports of the treating physician.[22] The ALJ considered the opinion of Dr. Michael Schwartz, a psychologist who examined Plaintiff in September 2010, but Plaintiff contends the ALJ misconstrued Dr. Schwartz's opinion to say that Plaintiff's problems with attention and concentration would not preclude Plaintiff from working. The Court disagrees that the ALJ misconstrued Dr. Schwartz's opinion, which was:

> He appears to have difficulty with attention and concentration. However, he has been able to work successfully in spite of this. He also has had a lot of difficulty getting along with others throughout his life. However, I believe there are some

---

[20]*Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir.1993) ("[C]laimant bears the burden of proof through step four of the analysis.").

[21]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

[22]SSR 96-5P, 1996 WL 374183, at *5 (July 2, 1996).

motivational issues involved in that this would not necessarily prevent his working.

Dr. Schwartz also assessed Plaintiff with a GAF of 55, which suggested no more than moderate symptoms.

The ALJ stated that she gave "some weight" to Dr. Schwartz's opinion, noting that Plaintiff was not taking his medications at the time he saw Dr. Schwartz and that Dr. Schwartz's opinion was consistent with Dr. Ram's treatment notes insofar as it reflected that Plaintiff experienced an improvement in functioning and symptoms when he was taking his medications. The ALJ did not address or interpret Dr. Schwartz's caveat that Plaintiff had been able to work successfully in spite of his problems with attention and concentration. In any event, the Court finds that the ALJ properly accorded some weight to Dr. Schwartz's opinion for the reasons the ALJ stated.

### D. Dr. Lauren Cohen and Dr. David Biscardi, State Agency Psychologists

Plaintiff contends that the ALJ gave "too much weight" to the opinions of the state agency psychologists Dr. Lauren Cohen and Dr. David Biscardi. Indeed, the ALJ gave their opinions "significant weight." But the Court finds that the ALJ properly considered the *Goatcher* factors in evaluating their opinions. Dr. Cohen opined that Plaintiff had moderate limitations in maintaining concentration, persistence, or pace, and moderate limitations in social functioning, but no marked limitations. And, Dr. Biscardi opined that Plaintiff had moderate limitations in the ability to interact appropriately with the general public and with the ability to understand, remember, and carry out detailed instructions, but no marked limitations. The ALJ explained that these opinions were supported by the medical record as a whole, the treatment notes of Dr. Ram, the GAF scores, and the activities of daily living. As explained above, this is

substantial evidence supporting the ALJ's RFC that Plaintiff's limitations are moderate.

### E. Dr. Kathy Pearce, Examining Psychologist

Plaintiff contends the ALJ erred in not addressing the weight she accorded the opinion of Dr. Kathy Pearce, a psychologist who examined and performed neuropsychological testing on Plaintiff on June 11, 2009.  The ALJ did not expressly discuss the weight accorded Dr. Pearce's opinion.  But, it is clear that the ALJ considered Dr. Pearce's findings and opinions, for the ALJ referenced Dr. Pearce's work twice in the ALJ's decision.  First, in addressing whether Plaintiff's impairments included a learning disability, the ALJ stated that while "(p)sychological testing in June 2009" revealed the Plaintif had low average to average intellectual ability, it did not render a diagnosis of a learning disorder.  And, in addressing the RFC, the ALJ stated that after "a detailed neuropsychological examination in June 2009," the diagnoses of Plaintiff's psychiatric impairments were changed.  Both of these statements evidence that the ALJ considered Dr. Pearce's examination, testing and report.

While the ALJ should have expressed what weight she accorded Dr. Pearce's opinion, that omission is not error requiring remand: it is clear within the context of the ALJ's opinion that, whether she accorded no weight, some weight, or significant weight to Dr. Pearce's opinion,  the ALJ's opinion would not have been different.  In that respect, the ALJ's failure to express the weight accorded to Dr. Pearce's opinion is harmless error.[23]

Dr. Pearce opined that Plaintiff "would most likely have a difficult time maintaining

---

[23]*See Williams v. Astrue*, No. 12-1108-RDR, 2013 WL 1151269, at *4 (D. Kan. March 19, 2013) (citing *Kersey v. Astrue*, 614 F. Supp. 2d 679, 696 (W.D. Va. 2009) (finding that failure to discuss a doctor's opinion is harmless when a different administrative result would not have been reached)).

competitive employment due to his combination of mental health problems. However, there is a significant possibility that his current difficulties may improve through management of his symptoms through medications and therapy."

Notably, Dr. Pearce examined Plaintiff in June 2009, before he was medicated. In explaining the weight accorded to Dr. Schwartz's opinion, the ALJ explained that when Dr. Schwartz examined Plaintiff in 2009, Plaintiff was not taking medication, and the ALJ explained that Dr. Ram's treatment notes are strong evidence that when following the medication regimen, Plaintiff's symptoms and functionality improve. Because Dr. Pearce examined Plaintiff during the same time period as Dr. Schwartz—that is, before Plaintiff had the benefit of improvement through medication—the Court finds that it is unnecessary to remand this case for the ALJ to express what weight she accorded Dr. Pearce's opinion. The ALJ has already expressed how examinations done before Plaintiff was on medication have limited utility. And, while a reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given," it may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."[24] Here, the ALJ supplied a reasoned basis for giving lesser weight to Dr. Schwartz's opinion, based on his relatively early examination of Plaintiff. And, that reasoned basis allows this Court to discern that Dr. Pearce's opinion did not change the ALJ's decision, such that this Court can and has meaningfully reviewed the ALJ's decision.

## V.  Conclusion

From the Court's review, there is substantial evidence supporting the ALJ's RFC determination. And in formulating the RFC, the ALJ properly evaluated and explained her

---

[24] *Stalford v. Colvin*, No. 12-4011-JWL, 2014 WL 872336, at *6 (D. Kan. March 8, 2013) (citations omitted).

evaluation of the medical opinions in this case.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's decision denying Plaintiff disability benefits is **AFFIRMED.**

**IT IS FURTHER ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision**.**

Dated: January 8, 2015

                                       S/ Julie A. Robinson  
                                       JULIE A. ROBINSON  
                                       UNITED STATES DISTRICT JUDGE